43  569
92  646

[No. 2,514.]

## WILLIAM BORLAND v. S. S. LEWIS.

FORFEITURE OF SWAMP AND OVERFLOWED LAND.—A failure to pay the interest annually, and to pay the principal at the end of five years, on a swamp and overflowed land purchase, made under the Act of 1855, works a forfeiture, and the State may resell, as if no purchase had been made.

IDEM.—A State may waive a forfeiture; but if, after a forfeiture, and before a waiver, the State resells the land forfeited, the waiver will not have the effect to divest the rights acquired by the second purchase.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

The defendant had judgment in the Court below.

The other facts are stated in the opinion.

*George Cadwalader*, for Appellant.

The construction which we place on section six is that the "forfeiture" is not, in fact, worked until it is judicially declared as against the holder of a certificate of purchase. The Act of April 9th, 1861 '(1 Hittell, 4102), goes exclusively on this theory. By its first section the Register of the State Land Office was directed to notify delinquent purchasers to pay up within thirty days. By the succeeding section it was made the duty of the District Attorney of the county where the land was situate to bring suit against the holders of certificates of purchase for the cancellation of the same. By section three payment within twenty days after decree of cancellation ended the proceeding, and restored the purchaser "to his rights in the land, the same as

if no neglect or forfeiture had been made." By section five the State waived part of the cause of forfeiture—*i. e.,* that which related to the reclamation of one half of the land. By section six it was provided that no second certificate of purchase should issue until the rights of the first purchaser had been judicially canceled. By section nine an additional credit of two years was given for the payment of the principal. By a law passed April 10th, 1862, entitled "An Act for the relief of purchasers of swamp and overflowed, salt marsh, and tide lands," one year's interest was remitted; and by the Act of March 31st, 1863, a second year's interest was likewise remitted. The State undoubtedly was competent to waive the assertion of her right of forfeiture; and this, we deem, she did by the Acts aforesaid. The plaintiff's certificate, instead of being annulled by failure to pay the agreed interest in advance, was, in 1859, declared to be prima facie evidence of title. (Stats. 1859, p. 227.)

*Terry & Carr,* for Respondent.

By the terms of the statute of 1855 the payment of the purchase money was a condition precedent, and no title could vest in a purchaser until full compliance with all the requirements of the Act. (*Montgomery* v. *Kasson,* 16 Cal. 193; 1 Washburn on Real Property, 468.) The conditions being precedent, no act on the part of the grantor was necessary to divest the title of the purchaser, for the sufficient reason that no title had ever vested. But if the entry is held to be a grant upon condition subsequent the plaintiff is in no better position. In the latter case the condition might be waived by the vendor's failure to enter for condition broken, or to take steps to declare a forfeiture. At common law an entry is necessary to forfeit an estate for condition broken. But "if the grantor is himself in possession of the premises when the breach happens, the estate revests in him at once, without any formal act on his part; and he

will be presumed, after the breach, to hold for the purpose of enforcing a forfeiture. (1 Washburn on Real Property, 475; *Willard* v. *Henry*, 2 N. H. 120; *Hamilton* v. *Elliott*, 5 S. & R. 375; *Andrews* v. *Senter*, 32 Me. 394.)

The plaintiff was never in possession of the land—the possession after his purchase remained as before, in the State, by virtue of its sovereignty; and upon the occurrence of the breach the forfeiture was enforced, without the necessity of any formal act. The Acts of the Legislature, passed subsequent to the entry of plaintiff, did not affect his interest, or relieve him from the consequences of his failure to perform his contract.


By the Court, RHODES, J.:

Ejectment to recover a parcel of swamp and overflowed land. The plaintiff appeals from the judgment. It appears from the findings that the plaintiff purchased the land in 1855; that in 1856 he paid one year's interest and received a certificate of purchase; that he made no further payment until 1865, when he paid all the interest which had accrued, except for two years, which the Legislature had remitted. The plaintiff never had the possession of the premises in controversy. Traverse, the defendant's grantor, made application to purchase the land January 4th, 1858; caused a survey to be made; received and recorded a certified copy thereof; paid one year's interest on the purchase money; and he, and the defendant after his purchase, paid the interest for several succeeding years; but neither Traverse nor the defendant received a certificate of purchase. It also appears that in 1861 Traverse conveyed the premises to the defendant; that Traverse, from his purchase to his conveyance to the defendant, had the possession of the premises, and that thereafter the defendant was in possession.

The purchase of each party was made under the provis-

ions of the swamp land Act of 1855 (Stats. 1855, p. 189). It was provided by section five that a person might purchase such lands on a credit of five years, by paying to the County Treasurer the interest for one year in advance. Thereafter the interest was required to be paid annually in advance. It was made the duty of the County Treasurer to pay over the money to the Treasurer of State, at the times when the State revenues were required to be paid, and transmit a certificate showing the purchase; and it was made the duty of the Treasurer of State to certify the same to the Secretary of State, who was required to issue a certificate of purchase. The sixth section provided, that "if any person or persons, purchasing lands upon a credit of five years, as provided in section five of this Act, shall fail or neglect to pay the principal and interest within the said term of five years from the date of the certificate of purchase, or shall fail or neglect to pay the interest, as required by this Act, for the space of one year from the time such interest may become due, or shall fail or neglect to reclaim at least one half of the land so purchased within the said term of five years, such neglect or failure shall work a forfeiture of such lands, and the same shall be resold as if no purchase had been made."

The plaintiff argues that there is no forfeiture in fact, because of his failure to pay the annual interest, until it is so judicially declared by a competent tribunal; that the statute merely specified certain facts, which, being proved, furnish the basis for a judgment or forfeiture. In our judgment it was intended, by the sixth section, to make the failure to pay the interest for one year after it became due operate as a complete forfeiture of the purchaser's rights in and to the land. Had it been designed that the officers charged with the sale of these lands should delay further action until the forfeiture had been judicially determined, it would have been so expressed in the Act; but, on the contrary, that

section provides that a failure on the part of the purchaser to pay the interest, etc., " shall work a forfeiture of such lands, and the same shall be resold as if no purchase had been made." The last clause would be useless if the resale could not be made until the forfeiture had been pronounced by a Court, for that would effectually rescind and put an end to the contract, when, of course, the lands would be subject to sale without further directions.

It requires no argument to prove that the State may waive a forfeiture—as it is contended by the plaintiff was done by the Act of April 9th, 1861 (p. 140)—and it is equally clear that if the State, after the forfeiture and before the waiver, resells the land, the waiver will not have the effect to divest the rights acquired by the second purchase.

Judgment affirmed.

Mr. Justice CROCKETT did not participate in this decision.